## HANDY *v.* MERCANTILE LUMBER CO.

[83 South. 674, In Banc. No. 20964.]

MASTER AND SERVANT. *Violation of statute limiting working hours gave no right of action to injured employee not working about machinery.*

Law 1916, chapter 239 (Hemingway's Code, sections 4523-4524) making it unlawful for parties engaged in manufacturing or repairing, to work an employee more than ten hours a day applies only to employees working with or around machinery and its violation gave no right of action for injury to an employee unloading from cars lumber which other employees were taking to the planing machine.

APPEAL from the circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Action by Mitchell Handy against the Mercantile Lumber Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Ridgeway, Enoch & Ridgeway,* for appellant.

Every violation of law enacted for the protection of another, that is the proximate cause of injury to that other, is negligence *per se,* and actionable. *Inland Steel Co.* v. *Yedinak,* 172 Ind. 423, 87 N. E. 229, 139 Am. St. Rep. 391.; *Nickey* v. *Steuder,* 164 Ind. 186, 73 N. E. 117; *Payne* v. *Chicago, etc., R. Co.,* 129 Mo. 405, 31 S. W. 885; *Bludorn* v. *Missouri Pac. R. Co.,* 121 Mo. 258, 24 S. W. 743; *Mathison* v. *Mayer,* 90 Mo. 685, 2 S. W. 834; *Linciln Tr. Co.* v. *Heller,* 72 Neb. 127, 100 N. W. 197, 102 N. W. 262; *Omaha St. R. Co.* v. *Duval,* 40 Neb. 29, 58 N. W. 531; *Wise* v. *Morgan,* 101 Tenn. 273, 48 S. W. 971, 44 L. R. A. 458; *Siebert* v. *McManus,* 104 La. 404, 29 So. 108; *Kyne* v. *Wilmington, etc., R. Co.,* 8 Houst (Del.), 185, 14 Atl. 922; *Gibson* v. *Leonard,* 143 Ill. 182, 32 N. E. 182, 17 L. R. A. 588, 36 Am. St. Rep. 376.

The supreme court of the State of California, in *McKune* v. *Santa Clara, etc.,* 110 Cal. 486, 42 Pac. 980, said: ''That the failure of any person to perform a duty imposed upon him by statute or legal authority is sufficient evidence of negligence has been repeatedly declared by this court. *Siemers* v. *Eisen,* 54 Cal. 418; *Driscoll* v. *Market Street, etc., Ry. Co.,* 97 Cal. 553, 32 Pac. 591, 33 Am. St. Rep. 203;'' *St. Louis & Iron Mountain Railroad Co.* v. *McWhirter,* 229 U. S. 265, 57 Law Ed. 1179.

## Point II.
### THE APPELLEE ENGAGED IN MANUFACTURING.

The business in which the appellee was engaged is that of planing or dressing lumber. And the appellee is what is known as and called a custom planing mill. Throughout the section of the state in which appellee is domiciled are numerous planers. The purchasers of this lumber more often than otherwise require this lumber to be planed or dressed. And to meet this require-

ment the manufacturers and sellers of this rough-sawn lumber, load and ship it out to their customers, via Jackson, Mississippi, in care of appellee, for planing. The appellee unloads the lumber, planes or dresses it, reloads it and ships it on to the customers. The operation is what is known as and called a milling-in-transit proposition.

The declaration alleges that the appellee carries on its business of planing lumber by means of a very great amount and variety of complicated machinery operated by the agency of steam, and large forces of employees.

This court, in the case of *Buckeye Cotton Oil Co.* v. *State,* 103 Miss. 767, 660 So. 775, said: "It will be observed that the business in which appellant was engaged is that of separating cotton seed into its component parts, giving to those parts new forms, and rendering them suitable for new uses. In the *Newman Lumber Co. case, supra,* we held that a person is engaged in manufacturing, within the meaning of this statute, when he is engaged in the production of articles for use from new forms, qualities, properties or combinations by means of an organized force of laborers working with machinery. From this it clearly appears that appellant is engaged in manufacturing."

So we say, that the appellee in the case at bar, whose business is that of planing or dressing lumber, which it does by a very great amount and variety of complicated machinery operated by the agency of steam, and large forces of employees, is engaged in manufacturing.

## Point III.
### APPELLANT WITHIN THE PROTECTION OF THE STATUTE.

It will be recalled that the declaration charges that the cars of lumber shipped to appellee for planing were placed on the private track of the appellee upon its premises and alongside its platform near its planing machinery for unloading for planing, and that the ap-

pellant was employed to assist in unloading these cars, his particular duty being to climb up into the cars of lumber and stick or hand out the pieces of lumber therein to fellow employees on said platform, who loaded same on two-wheel carts and rolled it to the planing machinery nearby for immediate planing, and who immediately returned with other empty carts 'for more lumber from the car for planing. It will be also recalled that the declaration charges that by reason of the performance of said duty by the appellant, the said machinery, mill and business of the appellee was kept going and in operation, in that said lumber was at once planed or dressed on unloading and reloaded by others on cars for shipment, being what is called a milling-in-transit matter.

In the first opinion of this court in the case of *State* v. *Newman Lumber Co.*, 102 Miss. 802, 59 So. 923, this court, speaking through Mr. Justice REED said: "A reasonable definition may be given to 'manufacturing' (Century Dictionary) as the system of industry which produces manufactured articles, and to manufacture, as the production of articles for use from raw or prepared materials, by giving to these materials new forms, qualities, and properties, or combinations, whether by hand labor or machinery used more especially for production in a large way by machinery, or many hands working cooperatively."

And on suggestion of error in the above case, in 103 Miss. 263, 660 So. Co. 215, this court speaking through Mr. Justice COOK, restricted the above definition, and limited "manufacture" to production by machinery, saying: "The constant changes in and additions to the definitions of words is aptly illustrated by the word "manufacture." Dictionaries of latest publication have added new definitions, created by the growth of the language. Referring to Webster's New International Dictionary, 1910, "manufacture" is thus defined: "To

produce by labor, especially now, according to an organized plan and with division of labor, and usually with the use of machinery,'' We must conclude that the legislature employed the words of this statute in their usual and most common sense, and when we now speak of manufacturing, we usually have in mind an organized force of laborers, working with machinery, to produce from the raw material the finished product. The broader language of our former opinion is qualified to harmonize with this definition.''

And this court, in the case of *Buckeye Cotton Oil Co.* v. *State,* 103 Miss. 767, 60 So. 775, had occasion to pass further upon the definition, and through Chief Justice SMITH, said: ''In order for appellant to be guilty, it must not only be engaged in manufacturing, but the employees alleged to have been worked by it overtime must be of the class protected by the statute.''

In the Newman Lumber Company case we held that all possible employees of a manufacturing establishment are not within the protection of the statute; but it necessarily follows from the construction there put upon the statute that all employees who compose the organized force and work with machinery, whose work supplements that of the machinery, and must be performed while it is, and in order that it may be kept in operation, are within its protection. The legislature clearly intended to protect the employee who is confined to the precincts of the manufacturing establishment and who is practically held in bondage by the machine with, or in connection with, which his work is performed, making it compulsory upon him to answer all of its motions with corresponding action. Appellant's employees Ford, Brown and Green are therefore within the protection of the statute, and appellant violated it in working them for more than ten hours in one day.

This, court, in this last case, speaking of the duty of said employee Brown, ''That Sol Brown was a seed feeder, whose duty as such was to feed the cotton seed from the bins into the tunnel conveyor by which they are carried, by means of a screw, automatically into a sand and boll screen room.''

And in regard to another employee, A. M. Henry, superintendent of the Buckeye Cotton Oil Co., who was named in the indictment, the court said in the above case; ''It is also impossible for us to determine from the agreed statement of facts whether the employee Henry is of the class protected by the statute, as we are not thereby sufficiently advised of the character of the work performed by him. His having general supervision of the operations of said mill may, or may not confine him to the precincts of the mill, and charge him with the duty of supervising employees while at work and the machinery while in operation.''

It is familiar learning that a law to pass muster, which prescribes a different rule of conduct for one employee, must be based upon some substantial difference in the business of the two employers that bears a reasonable and just relation to the rule prescribed; otherwise it would be unconstitutional. *Bradford Construction Co.* v. *Heflin,* 88 Miss. 314, 42 So. 174.

When the demurrer was argued in the court below, the learned attorney who represents the appellee, with the 113th volume of the Mississippi Supreme Reports in his hand, remarked to the court that he was going to read a decision that doubtless opposing counsel had read. He then read to the court that opinion in the case of *Bledsoe* v. *Bostic Lbr. & Mfg. Co.,* 113 Miss. 188, 73 So. 881, which holds that the employer is not liable for a violation of chapter 165, page 173, Laws 1912, unless the minor was employed indoors at work injurious to health, or in operating dangerous machinery.

Chapter 165, Laws 1912, prohibits the employment of minors in doors at work injurious to health, or in operating dangerous machinery. It was not attempted to state a case under that act for the appellant was not working in doors at all, nor with machinery. And it was distinctly stated in the declaration that the suit was predicated upon a violation of the ten-hour law. But the Bledsoe case seemed to please opposing counsel, and had great weight with the learned trial judge, it appeared to us, as showing that the employee must work with machinery.

We respectfully submit that the appellant, who handed the lumber out of the car to fellow-employees who in turn carried it to the employees feeding the planers, who fed it to the planers, was as much within the protection of the statute as the employees who actually fed it into the planers.

So we say, that when the statute construed in the Bledsoe case, and this statute, construed in the Newman Lumber Company and Buckeye Oil Company cases, are compared, it at once appears that the Bledsoe case does not apply to the case at bar, and that the legislature did not intend to protect by the ten-hour law only those employees of manufacturers who operate the machinery, and only from injury by the machinery; but the intention was to protect all employees within the general designation as• outlined in the Buckeye Cotton Oil Company case covers the beneficent purpose of the legislature in the passage of the ten-hour law, and keeps the application of the law within constitutional limitations.

And we respectfully submit that the appellant was an employee of the appellee company within the protection of the ten-hour law.

*Watkins & Watkins,* for appellees.

The appellee is liable in this case, if at all, by reason of the violation of some statutory law of the state of Mississippi. Chapter 165 of the Acts of 1912 furnishes the rule for the liability of the appellee growing out of the employment of the appellant, if any liability there be.

The action of the appellant in this case is not based upon the common law; this is a statutory cause of action. There is no allegation in the declaration of any act or conduct amounting to negligence upon the part of the appellee, unless the employment of the appellant is itself negligence. The declaration contains no allegation that the place that appellee furnished appellant to work was unsafe; nor was there any other duty which appellee owed to appellant growing out of the relation of master and servant breached. The sole claim made by appellant is that he was required or permitted to work more than ten hours in one day, and having so worked, received injury for which the appellee is liable.

We beg to call the attention of the court to the fact that upon the 16th day of March, 1912 there were approved by the Governor of the state of Mississippi two acts regulating the relation of master and servant in respect to the hours of labor and the age of employees. These acts appear to have been passed on or about the same day, and, dealing with the same subject-matter, should be treated and construed together. Chapter 165, which comprises section 4508 to 4514 of Hemingway's Code, deals entirely with the employment of children of certain ages. Section 2 of the act prohibits the employment of a boy under sixteen years of ages in any manufacturing establishment for more than eight hours per day, or forty-eight hours per week. Chapter 157 of the Acts of 1912 prohibits any manufac-

turing establishment from working its employees more than ten hours in any one day.

We respectfully submit that the relations of the appellees and appellant were controlled by chapter 165 of the Acts of 1912. That is necessarily true, because the appellant was under sixteen years of age.

It is perfectly apparent that one of the acts, that is to say, chapter 157, contemplates the employment of employees over eighteen years of age, and that chapter 165 had reference to the employment of minors, boys under sixteen and girls under eighteen; the one act referring to minors of a certain age, the other evidently dealing with the employment of adults. If that were not true, we would have one act, to-wit, chapter 157, which would permit the employment of minors for ten hours per day in manufacturing establishments, and another act prohibiting the working of minors of a certain age more than eight hours per day, or forty-eight hours per week.

In 36 Cyc, page 1151, the following rule is announced: "The rule that statutes *in pari materia* should be construed together applies with peculiar force to statutes passed at the same session of the legislature; it is to be presumed that such acts are imbued with the same spirit and actuated by the same policy, and they are to be construed together as if parts of the same act. They should be so construed, if possible, as to harmonize, and force and effect should be given to the provisions of each.

We therefore respectfully submit that chapter 157 should be construed by the court as applying to adults, and chapter 165 as applying to minors under eighteen years of age. Both of the acts refer to employees in manufacturing establishments.

It will be conceded by appellant's counsel that the appellant does not fall within the protection sought to be afforded by chapter 165, section 9 of the chapter is as

follows: The provisions of this act shall apply only to manufacturing establishments engaged in manufacturing or working in cotton, wool or other factories, and to canneries and manufacturing establishments where children are employed indoors at work injurious to health, or in operating dangerous machinery, but the provisions of this act shall not apply to fruit canneries.''

The declaration contains no allegation that the plaintiff was employed in doors, at work injurious to health, or at work operating dangerous machinery. This act was construed in the case of *Bledsoe* v. *Bostick Lumber Co.*, 73 So. 881, 113 Miss. 118.

Now, it will be conceded in this case that the appellant was not working in doors, that he was not working around machinery, and was not in any manner charged with its operation. We respectfully submit that the demurrer was properly sustained.

It is the contention of the appellant, however, that his employment was in violation of chapter 157 of the Acts of 1912, to which we have directed the attention of the court. We wish to show the court that even if chapter 157, regulates the employment of minors, the appellee is not liable in this case, because the appellant does not fall within the protection afforded by the legislature of the state of Mississippi by that chapter. It will be noted that the liability sought to be predicated against the appellee in this case is purely statutory, that there is no independent ground of negligence attempted to be averred in the plaintiff's declaration.

The trouble about appellant's case is that this court has heretofore so construed chapter 157 as to apply only to employees engaged either in the actual operation of machinery, or employees who, in the performance of their duties, work around machinery, must conform their movements to it, and are kept in bondage by it; in other words, this court has placed practically the same

construction on chapter 157 in respect to the employ-
ment of adults as has been placed on chapter 165 in
respect to the employment of minors.

Chapter 157 of the Acts of 1912 was first construed
by this court in the case of *State* v. *Newman Lumber
Co.*, 60 So. 215, 103 Miss. 263.  In that case a manufac-
turing concern was indicted for working one of its
employees more than ten hours per day, and the ques-
tion was very elaborately presented.  The court was
called upon to construe the act in its application to the
class of employees to be protected, and in that case the
court made it exceedingly plain that the act applied
only to employees actually engaged in the operation
of machinery.

This court was again called upon to construe the
act in the case of the *Buckeye Cotton Oil Company*
v. *State,* 660 So. 775, 103 Miss. 767.  In that case,
there was an affidavit against the Buckeye Cotton Oil
Co., a manufacturing company, containing several
counts charging the violation of chapter 157 of he
Laws of 1912.

In that case, there were several employees who were
engaged more than ten hours per day.  Thy were all
either engaged in the operation of machinery or had
duties to perform in respect to its operation, which re-
quired them to conform the movements of their body to
the manipulation of the machinery.  The defendant,
who was the appellant in that case, contended that
although these employees were either engaged in oper-
ating or working around machinery, during the day,
there were various periods of from ten to thirty minutes
in which the employee was not engaged in the perform-
ance of any duty, and it was the contention of the ap-
pellant that this time should be deducted from ten
hours per day allowed by law.

In that case, again, the constitutionality of the act
was represented.  It will be conceded that the appel-

lant did not compose the organized force of the mill of appellee and work with machinery. Counsel for appellant, however, argue that his work supplemented that of machinery; in other words, his work did that without which the machinery could not be operated.

The legislature clearly intended "to protect the employee who is confined to the precinct of the manufacturing establishment and who is practically held in bondage by the machinery with, or in connection with which, his work is performed, making it compulsory upon him to answer all of its motion with corresponding action." (quotation from the *Buckeye Cotton Oil Company case, supra*Q.

The appellant does not allege that his duties were performed on the inside of the mill itself, even if material, and we call the attention of the court to the fact that all presumptions must be taken against the pleader. *Powell* v. *Stowers,* 47 Miss. 577; *McCerren* v. *R. R. Co.,* 72 Miss. 1013; *Clay* v. *Lowry,* 51 Miss. 879.

In the Buckeye Cotton Oil Company case, Judge Smith says that the duties must be performed while the machinery is kept in operation; meaning, of course, that it must be some duty in connection with the operation of the machinery, which must be performed in order that the machinery be kept going, and has no reference to emplyees whose duties are remote from the operation of the machinery itself; the performance of which, however, is necessary in order that the mill may be operated.

Counsel for appellant, however, argue that the legislature must have intended to include within the act and the protection afforded thereby other employees than those engaged in the operation of machinery, or whose duties brought them in connection with the operation of machinery; and, to support this contention, counsel for appellant say that if the legislature had intended to

include only employees operating or working around moving machinery, that it would have used different language. We think, if your Honors please, that the situation is just the reverse.

## Point II.

Even if it be true that the protection afforded by chapter 157 of the Acts of 1912, apply to appellant, yet the appellee is not liable under the declaration in this case, because the violation of hours or service was not the proximate cause of the injury and the appellant was not in the performance of any duty connected with his employment at the time he was injured.

It is the contention of appellant's counsel that chapter 157 of the Acts of 1912 applies to minors as well as chapter 165. Conceding merely for the sake of argument the correctness of this position, a distinction must be borne in mind which is not observed in appellant's brief in respect to the difference between the violation of a law prohibiting the employment of a person and the violation of a statute fixing the hours of service.

The case of *Inland Steel Co.* v. *Yedinak* (Ind.), 139 A. S. R. 391, was of the class of cases dealing with a statute prohibiting the employment of minors at all. In such case, the master becomes an insurer for the safety of the minor.

The case of *McKune* v. *Santa Clara. etc.; Lumber Co.,* (Cal.), 42 Pac. 980, cited by counsel for appellant, was not a labor case at all.

In the case of *Waskiewisex* v. *Milwaukee Light Co.* (Wis.), 133 N. W. 596, the court used the following language: "The plaintiff's claim here is not based upon any injury because of obstruction to public travel, or to his rights as traveler or otherwise, in the street. He was a member of the crew engaged in the work at the time of the injury, and even though the car was unlawfully on the street, and unlawfully operated, such

fact in no way contributed to the injury of which the plaintiff complains and gave him no right of action, and constitutes no breach of duty to the plaintiff upon the facts established by the evidence.''

Likewise, the case of *Williams* v. *So. Pac. R. R. Co.* (Cal.), 160 Pac. 660, prohibited the employment of a minor at night. In that class of cases, as before stated, where the injury occurs while the employee is in and about the master's business; that is to say, injured in the course of the employment, negligence *per se* is said to exist and absolute liability predicated. But if the appellant's theory in this case is correct, we are dealing with a case where there was no absolute prohibition against the employment, but an act prohibiting the working beyond certain hours; and, in such cases it is always held that the excessive hours of employment must be the proximate cause of the injury; and it is ordinarily held that some act of negligence of the master must also occasion the injury, in addition to the employment for excessive hours.

Counsel for appellant cite the case of *St. Louis, I. M. & S. R. R. Co.* v. *McWhirter*, 229, U. S. 265, 57 L. Ed. 1179, and a very unfortunate citation for appellant this case is. In that case the statute of the United States enacted for the safety of the public and employees, prohibited the working of any employee on any interstate railroad more than sixteen hours, and in this particular case the brakeman was worked in excess of that time, and while so working he went to get off of the end of the pilot of the engine to perform some duty in connection with his employment, that is to say, he was going to throw a switch. He fell into the middle of the track and was run over and killed. The supreme court of Kentucky held that the act imposed absolute liability, and likened the act to the safety appliance acts of congress. The supreme court of the United States reversed the case and said that the master was

not an insurer of the safety of the servant working over hours in excess of the statute. The court would not concede that the master would be liable if free from negligence, even if the working overtime occasioned the injury, but did say that in the particular case, although the employee was injured and lost his life while performing his duties, and working overtime in violation of the statute there being no negligence on the part of the master, there was no liability.

The question was again brought before the supreme court of the United States in the case of *A T. & S. R. R. Co.* v. *Swearingen,* 239 U. S. 339, 60 L. Ed. 317. In that a fireman of a locomotive engine was required to work more than sixteen hours, and while oiling the engine, standing on the running board, in the performance of his duties, fell and was injured. The court held in that case that there was no liability. *St. Louis, I. M. & S. R. Co.* v. *McWhirter,* 229 U. S. 265, 279, 280, 57, L. Ed. 1187, 33 Sup. Ct. Rep. 858. The question was reviewed in the case of *Osborne, Admr. R. R. Co.* (Ky.), 164 S. W. 818; *St. Louis, I. M. & S. R. Co.* v. *McWhirter,* 229 U. S. 265, 33 Sup. Ct. 858, 57 L. Ed. 1179; *Bjornsen Northern Pac. R. R. Co.* (Wash.), 146 Pac. 575; *St. Louis, I. M. R. R. Co.* v. *McWhirter,* 229 U. S. 265, 33 Sup. Ct. 858, 57 L. Ed. 1179.

From the foregoing authorities, it is demonstrated that it is not sufficient for the employee merely to show a violation of the hours of service. At least some negligence on the part of the master must be shown. The foregoing authorities announce the rule that only slight negligence would be necessary. In this case, we have not even a suggestion that the master was guilty of any kind of negligence whatsoever; we have the bare fact of the claim of over service and the injury itself.

SYKES, J., delivered the opinion of the court.

The appellee, Mitchell Handy, as plaintiff, by next friend, filed suit in the circuit court of Hinds county against the defendant, Mercantile Lumber Company, for damages for personal injuries. The declaration, in short, alleges that the lumber company violated the ten-hour labor law in his case by permitting him to work all day and all night. This law is found in chapter 239 of the Laws of 1916, sections 4523 and 4524, Hemingway's Code, and in part provides that: "It shall be unlawful for any person, firm or corporation engaged in manufacturing or repairing, to work their employees more than ten hours per day, except in cases of emergency, or where the public necessity requires in such departments."

The declaration negatives the necessity or emergency requiring the plaintiff to work for over ten hours. The duties of the plaintiff and the manner in which he sustained his injuries are thus alleged in the declaration:

"That the particular duty of the plaintiff that night was to climb up into a car of lumber and hand out pieces of lumber therein to fellow employees on said platform, who loaded same on two-wheel carts and rolled it to the planing machinery near by for immediate planing, and who immediately returned with other empty cars for more lumber from the car for planing, the same as in the daytime. That plaintiff before said hour of 4 o'clock a. m. had grown very weary, fatigued, sleepy, and listless as the result of his many continuous hours of labor and lack of rest and sleep as aforesaid; and about said hour of 4 o'clock a. m., plaintiff and his fellow employees having just finished unloading a car of lumber, plaintiff, as was his duty as said employee of defendant, climbed up into another car of lumber which was next to be unloaded, prepara-

tory to unloading the same by the time his said fellow employees returned from carrying the last of the lumber to the planers from the car just unloaded, and plaintiff, in his weary, fatigued, sleepy, anl listless condition, the result as aforesaid of his many hours of continuous labor and lack of rest and sleep, must have fallen asleep momentarily, for suddenly he noticed that everything was quiet about him, and his fellow employees absent.  And by reason of his weary, fatigued, sleepy and listless condition, the result of his many hours of continuous labor and lack of rest and sleep as aforesaid, plaintiff thought his said fellow employees would not return; and, by reason of his said condition, plaintiff thought it his duty to ascertain what had become of his said fellow employees, which it would have been had the orders to them been changed and orders given them by defendant to unload some other car than the one in which plaintiff was; and, in. order to ascertain what had become of his said fellow employees, plaintiff undertook to climb down out of said car, and by reason of his said weary, fatigued, sleepy, and listless condition, the result as aforesaid of his many hours of continuous labor and lack of rest, plaintiff lost his footing and hold and fell between the said cars and platform to the ground, whereby one of his legs was broken and plaintiff otherwise bruised in his body.''

There was a demurrer interposed and by the lower court sustained to this declaration. It is unnecessary to set out the grounds of the demurrer.  From this judgment of the circuit court this appeal is presented.

One of the contentions of the appellee is that, the plaintiff being a minor, his rights and liabilities in this case are governed alone by chapter 165 of the Acts of 1912, sections 4508-4514, Hemingway's Code, and that under this act there can be no liability. *Bledsoe* v. *Lumber Co.,* 113 Miss. 118, 73 So. 881.

It is not, however, necessary for us to decide in this case whether or not chapter 239 of the Laws of 916, sections 4523 and 4524, Hemingway's Code, only applies to adults, for the reason that the plaintiff fails to state a case in his declaration under this law as construed by the decisions of this court.

The particular work performed by the plaintiff on the night of his injury was that of unloading cars by giving the lumber to other servants on a platform, and these other servants then loaded the lumber on two-wheeled carts and rolled the lumber then into the planing mill near by. From the declaration it will thus be seen that the plaintiff was not engaged in working with the machinery, that he was not working about the machinery, that his work had nothing to do with the starting or stopping of the machinery, that his movements did not have to conform to the movements of the machinery. He could have unloaded the car while the machinery was not running. On the other hand, the machinery could be running while plaintiff was idle. There is no such connection between the work of the plaintiff and the operation of the machinery that brings the plaintiff within the protection of this law. It was not necessary for the plaintiff to go where the machinery was running. So far as the declaration shows, he may have been many feet away from any part of the machinery. Such an employee does not come within the protection of this law.

In construing this law in the case of *State* v. *Newman Lumber Co.*, 103 Miss. 263, 60 So. 215, 45 L. R. A. (N. S.) 858, it is said:

"Thinkers, working to conserve the mental and physical health of toilers in the modern manufactories, have discovered, or think they have discovered, that the concentration of the human mind and muscle, for many consecutive hours, upon the watching and manipulation of rapidly moving machinery, tends to weary the body

of the worker, and to weaken his reasoning faculties, and, ultimately, to permanently impair his physical and mental efficiency. When the legislature prohibited employers engaged in manufacturing from employing laborers for more than ten hours, we think, it was the intention to promote the general welfare and protect the workers in that class of manufacture using machinery of a character which requires in its operation constant tension of mind and body. In other words, it was believed that there are manufactories in this state whose operatives could not work longer than ten consecutive hours without impairing their health, and without endangering their lives and their bodies, and yet competition forced the laborer to take the risk or starve. Believing this, the legislature, in the exercise of the police power of the state, enacted the law under review."

Again this law was under review in the case of *Buckeye Cotton Oil Co.* v. *State,* 103 Miss. 767, 660 So. 775. In that opinion this language is used:

"In order for appellant to be guilty, it must not only be engaged in manufacturing, but the employees alleged to have been worked by it overtime must be of the class protected by the statute. In the Newman Lumber Company Case we held that all possible employees of a manufacturing establishment are not within the protection of the statute; but it necessarily follows from the construction there put upon the statute that all employees who compose the organized force and work with machinery, whose work supplements that of the machinery, and must be performed while it is, and in order that it may be kept in operation, are within its protection. The legislature clearly intended to protect the employee who is confined to the precincts of the manufacturing establishment, and who is practically held in bondage by the machine with, or in connection with, which his work is performed, making it com-

pulsory upon him to answer all of its motion with corresponding action.'ʼ

This is the settled construction of the statute by this court.

The judgment of the lower court is affirmed.

*Affirmed.*